UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Troy Koenig, et al.,              :

     Plaintiffs,               :
                                  Case No. 2:09-cv-1097
     v.                        :

USA Hockey, Inc.,                 :      Judge Watson
                                       Magistrate Judge Kemp
     Defendant.                :

<u>OPINION AND ORDER</u>

As this Court has explained in its prior orders (see, e.g.,
Doc. 35; Doc. 41), this case arises out of an action taken by
defendant USA Hockey, Inc., the governing body of amateur hockey
in the United States, relating to the 2008 membership year.
According to the complaint, the governing board of that
organization voted to terminate the 2008 membership year early
and to begin the following membership year (and to collect
payment from its members for that year) while the 2008
membership, a 12-month long membership, should still have been in
effect.  Plaintiff, Troy Koenig, seeks to represent a class of
members of the organization who were allegedly denied the full
benefit of their 2008 membership.

On August 31, 2010, some months after the case was filed,
plaintiff moved for leave to file an amended complaint.  If
granted, the motion would accomplish two things.  First, Nicholas
Bush, another USA Hockey member, would be added as a plaintiff.
Second, sixty-seven volunteer members of the USA Hockey's Board
of Directors would be added as defendants.  USA Hockey consents
to the first amendment but vehemently opposes the second.  It
filed both a response and a supplemental response to the motion,
and plaintiff, in addition to replying, has moved to strike the
supplemental response.  Although, technically, USA Hockey might
still have the right to respond to the motion to strike, the

Court will deny the motion, so USA Hockey will not be prejudiced by a ruling on the present record.  For the following reasons, the motion to amend, insofar as it relates to the addition of the sixty-seven directors of USA Hockey, Inc., will also be denied.

I.

If joined as parties to this case, the sixty-seven USA Hockey directors would not be defendants for all purposes.  Count one of the proposed amended complaint pleads a claim for breach of contract, and there is no allegation that any of the directors were parties to the contract at issue, which was made between USA Hockey and its members.  Count two, however, alleges a violation of the Ohio Consumer Sales Practices Act.  According to the memorandum filed in support of the motion for leave to amend, the directors of USA Hockey, as individuals, can be found liable under the Consumer Sales Practices Act because they voted to approve the truncation of the 2008 membership year, and that action, according to plaintiff, is itself a violation of the Act. Thus, according to plaintiff, the proposed amendment would not be futile.  Plaintiff also argues there is no other significant reason for denying leave to amend.

USA Hockey advances three reasons why the court should not grant the motion.  First, it argues that these defendants could have been joined when the case was initially filed and that the delay in proposing their joinder is a factor which favors denying the motion.  Second, it argues that the joinder would be prejudicial because it would unduly complicate the case, require the case schedule to be revised to accommodate the individual interests of the additional defendants, and raise significant issues concerning personal jurisdiction.  Last, disagreeing with plaintiff, USA Hockey asserts that the amendment would be futile because the proposed amended complaint does not state a valid claim against the individual directors of USA Hockey under the

Consumer Sales Practices Act. In its supplemental memorandum, it also argues that any claim against the director defendants would be barred by the federal Volunteer Protection Act, 42 U.S.C. §§14501 *et seq.* In support of this contention, USA Hockey has submitted a declaration from Mary Rae Briggle, its Assistant Executive Director for membership services, stating that USA Hockey is a nonprofit organization, its board of directors is made up of volunteers, and these volunteers receive no compensation for their services (although they are reimbursed for out-of-pocket expenses incurred associated with their duties as directors).

In the reply, plaintiff takes issue with the notion that this amendment could have been offered earlier, especially given USA Hockey's reluctance to provide any discovery while its motion to dismiss was pending, and it also argues that any prejudice which USA Hockey envisions can easily be cured. It also repeats its argument that the individual officers or directors of a corporation can be held personally liable under the Ohio Consumer Sales Practices Act. Finally, with respect to the applicability of the Volunteer Protection Act, plaintiff asserts that the Court cannot consider, and should strike, the declaration attached to the supplemental memorandum because it contains information outside the pleadings and cannot be used to determine whether the proposed amended complaint could survive a motion to dismiss.

## II.

It is not necessary to write a treatise on the legal standards which apply to a motion to amend a complaint. Fed.R.Civ.P. 15(a)(2) states that when a party is required to seek leave of court in order to file an amended pleading, "[t]he court should freely give leave when justice so requires." Various factors have been identified, however, which cut against the admonition freely to grant leave. They include undue delay

in offering the amendment, prejudice to opposing parties or to the case schedule if the amendment is allowed, and futility of the amendment in the sense that any claims added by an amended complaint would not likely survive a motion to dismiss.  See, e.g., Phelps v. McClellan, 30 F.3d 658, 662-63 (6th Cir. 1994); Robinson v. Michigan Consolidated Gas Co., 918 F.2d 579 (6th Cir.1990).  This latter factor is most often applied when the futility of an amendment is obvious, such as when the new claim is clearly barred by the statute of limitations or there is some obvious jurisdictional defect which would prevent the Court from entertaining the claim at all.  See, e.g., Stuckey v. Online Resources Corp., Case No. 2:08-cv-1188 (S.D. Ohio November 2, 2010) (Holschuh, J.), citing, inter alia, 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, §1487 (2010).  However, even when the issue is not so clear-cut, the potential futility of the amendment is a factor which can be weighed along with other considerations in determining if it is a sound exercise of discretion to grant a motion for leave to amend.  See Hageman v. Signal L.P. Gas, Inc., 486 F.2d 479, 484 (6th Cir. 1973) (among the "several elements" which the court can examine, and consider as "factors which may affect the decision," is "futility of amendment ...").

III.

The Court first examines the futility of amendment factor. As part of its futility argument, USA Hockey raised the Volunteer Protection Act as a potential defense to the claims which plaintiff seeks to assert against the individual directors.  If the Court were able to conclude that this Act applies, that would be the type of immunity from suit which could be determined in the context of a motion to amend and which could provide a clear basis for viewing the proposed amendment as futile.  However, the Court concludes that, despite the fact that there is a fair

-4-

probability that the Act applies here, that determination cannot be made in this context.

The Volunteer Protection Act provides, in pertinent part, that if a volunteer of a nonprofit organization acts on behalf of the organization and, as a result, causes some harm, so long as the volunteer acted within the scope of his or her responsibilities and did not act willfully, criminally, in a grossly negligent or reckless manner, or did not exhibit a conscious, flagrant indifference to the rights or safety of another, the volunteer cannot be held liable. 42 U.S.C. §14503. In order for this immunity to apply however, the organization for which the individual volunteers must fall within the statutory definition of "nonprofit organization" found in 42 U.S.C. §14505, and the individual must meet the statutory definition of a volunteer, which applies only to a person performing services for a nonprofit organization who receives no compensation or other thing of value in lieu of compensation. See 42 U.S.C. §14505(4), (6). As noted, USA Hockey attempts to establish the preconditions for the directors' claim to immunity from suit by way of the declaration attached to its supplemental memorandum filed in opposition to the motion for leave to amend.

Plaintiff points out, correctly, that in order for the Court to deny a motion for leave to amend on grounds that the amendment would be futile, the proposed complaint would have to be unable to survive a motion to dismiss filed under Fed.R.Civ.P. 12(b)(6). Such a motion, in turn, is ordinarily confined to matters contained within the four corners of the pleading. Roth Steel Products v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1983) Immunity from suit is generally considered to be an affirmative defense. See Taylor v. Duncan, ___ F.Supp. 2d ___, 2010 WL 2572119 (E.D. Tenn. 2010). Although a court may grant a motion to dismiss founded upon the assertion of an affirmative defense,

-5-

it may do so only if all of the facts necessary to establish the defense are contained within the complaint itself.  See Trans-Spec Truck Service, Inc. v. Caterpillar, Inc., 524 F.3d 315 (1st Cir. 2008).

At least with respect to the Victim Protection Act defense, that is not the case here.  The proposed amended complaint does not plead the facts which, under §§14504 and 14505, are needed to trigger the applicability of the Volunteer Protection Act.  As a result, even if the Volunteer Protection Act will ultimately prove to be a bar to the claims asserted in the proposed amended complaint, for the procedural reasons just described, the Court may not consider that issue in determining whether or not the proposed amended complaint could survive a motion to dismiss.  It need not, however, strike the filings on this subject simply because it has decided that these filings are not persuasive on the issue they were designed to address.

IV.

The other issue which could be raised in a motion to dismiss, and which therefore enters into the inquiry as to the utility or futility of the offered amendment, is whether the proposed amended complaint states a claim against the individual directors of USA Hockey under the Ohio Consumer Sales Practices Act.  Plaintiff points out, correctly, that under certain circumstances, individuals who act on behalf of or through the auspices of a corporate entity may be individually liable for violations of the OCSPA.  So, for example, in State ex rel. Fisher v. Warren Star Theater, 84 Ohio App. 3d 435 (Trumbull Co. 1992), an individual who indirectly participated in an action which violated the OSCPA was held liable where the evidence showed that he was one of two trustees of the organization, held three corporate offices, and was the business' general manager. The Fisher court relied on an earlier decision of the Cuyahoga

-6-

County Court of Appeals in <u>Gayer v.  Ohio Business Trading Ass'n</u>, 1988 WL 87629 (July 7, 1988), which held that individual liability existed under the OSCPA if the corporate officer sought to be held liable himself committed a deceptive practice which violated the statute.  In order for a complaint to state a claim for individual liability under the OSCPA, however, the complaint must allege that the corporate representative "actively participate[d] in the wrong that resulted in liability."  <u>Charvat v.  Farmers Ins. Columbus Inc.</u>, 178 Ohio App 3d 118, 134 (Franklin Co. 2008).

Here, according to the proposed amended complaint, the subclass which wishes to recover under the Consumer Sales Practices Act consists of all Ohio residents who had a written membership agreement with USA Hockey for the 2008 membership year and who, because of the acceleration of the commencement date of the 2009 membership year, did not receive the complete benefit of their 2008 membership.  The complaint alleges that each of the director defendants voted for that acceleration in their capacity as directors of USA hockey.  The complaint further alleges that the sale of annual memberships was a "consumer transaction" within the meaning of the OSCPA and that USA Hockey committed or engaged in three deceptive acts or unconscionable practices, namely, falsely representing to the plaintiffs that they would get a full year of membership benefits when they signed up for the 2008 membership year, that the membership year would, in fact, last for a year, and failing to refund a portion of the fees paid for the 2008 membership year when it was terminated before it expired.

As far as the directors are concerned, the key allegation in the proposed amended complaint appears in paragraph 41.  The paragraph reads in full as follows:

The Director Defendants participated in the above violations by voting to accelerate the 2009 Season with the awareness, or under circumstances where actual awareness could be inferred, that Plaintiffs and the subclass would not receive the entire year's worth of benefits under the 2008 Membership Agreement and that Plaintiff and the subclass would not be offered a refund, and are therefore personally liable under Ohio Revised Code. 1345 *et seq.*

Under the cases cited above, the key question which would be posed by a motion to dismiss (and therefore the key question concerning whether this amendment would be futile) is whether voting to approve the acceleration of the 2009 membership year without also voting to refund money to the 2008 members – which is the only action the directors are alleged to have taken, as opposed to additional actions attributed to USA Hockey in ¶38 of the proposed amended complaint – can be characterized as a deceptive act or unconscionable practice, and therefore a violation of the OSCPA.

The proposed amended complaint identifies, in ¶40, a large number of ways in which all of USA Hockey's actions, as described in ¶38, violated the OSCPA, but it does not tie the specific action of the director defendants to any specific subsection of the Act.  The reply filed in support of the motion for leave to amend is no more enlightening; it addresses the question of whether individual directors of a corporation can be held liable, along with the corporation, for violations of the OSCPA, but it does not directly address the question of how the individual directors' actions fit within the statutory definitions of deceptive practices or unconscionable acts.  Plaintiff does assert that the substantive allegations of a violation of the OCSPA have survived a motion to dismiss, but as the Court's order overruling the motion to dismiss points out, "the motion did not actually attack the sufficiency of the complaint ...." Doc. #41,

-8-

at 1.  Thus, the Court has not yet made a ruling that any of the allegations of a violation of the OCSPA state a claim upon which relief can be granted, and it is an open question as to whether the directors' alleged actions do so.

The OCSPA defines deceptive acts in a way that is illustrative rather than comprehensive.  See Shumaker v. Hamilton Chevrolet, 184 Ohio App. 3d 326, 334 (Lawrence Co. 2009) (R.C. 1345.02(B) contains a nonexhaustive list of "deceptive" practices).  Those subsections of §1345.02(B) which are identified in ¶40 of the complaint are (1), (2), (5), and (6).  All of these apply to "the act or practice of a supplier in representing" what is described in each subsection.  It is not clear that, by voting to accelerate the 2009 membership year, the directors (or, as a result of their vote, USA Hockey) represented anything to its members about the 2009 membership year that was deceptive in any way, nor in the way described in these statutory subsections.  The complaint does not allege that, with respect to 2009, any representation was made that the new membership year carried with it some characteristic or benefit that it did not have (subsection (1)), that is was of a particular grade or standard that it was not (subsection (2)), that it was supplied in accordance with some prior representation when it was not (subsection (5)), or that it was going to be supplied in some greater quantity than the supplier actually intended to supply (subsection (6)).  There is also no allegation that any other deceptive representation accompanied the 2009 membership year offer.  Thus, it does not appear that the proposed amended complaint states a claim against the directors under §1345.02.

Section 1345.03 of the OCSPA differs from §1345.02 in that it deals with unconscionable acts or practices rather than deceptive acts or practices.  It lists, in subsection (B), a number of factors to be taken into consideration in determining

if a particular act or practice is unconscionable.  The complaint
specifically refers to subsections (3), (5), and (7), which deal
with, respectively, knowing at the time of the transaction that
the consumer would not receive a substantial benefit; requiring
the consumer to enter into a one-sided transaction; or refusing
to make a cash or check refund for an item purchased that way
unless the supplier had conspicuously posted its refund policy in
its place of business.  Again, none of these factors appears to
apply to the offer of the 2009 membership year.  There is no
allegation that USA Hockey's membership offer was not an offer
conferring a substantial benefit on those who accepted it, that
it was a one-sided transaction, or that there was any refusal to
offer a refund for that membership year.  To the extent that the
directors also voted (or, more likely, failed to vote) on the
issue of whether a refund for 2008 should be made, while that is
a "refund" question, it does not fit comfortably within the
refund practice described in §1345.03.  Thus, there is also
little likelihood that the proposed amended complaint states a
claim against the directors under §1345.03.

The proposed amended complaint also refers to several
sections of the Ohio Administrative Code.  One of the sections
referred to, OAC §109:4-3-16, applies to the sale of motor
vehicles and does not seem to be particularly applicable here.
The other two reference are to Section 109:4-3-02 which deals
with exclusions and limitations in advertisements, and which is
also difficult to relate to anything involving the 2009
membership year offer, and Section 109:4-3-14.  That code section
defines an unfounded promise to deliver goods or services
promptly as a deceptive practice, and it also defines as
deceptive the act or practice of furnishing only similar goods -
even goods of equal or greater value - when there was never any
intent to deliver the goods actually ordered.  Again, there is

nothing in the proposed amended complaint to suggest that the 2009 membership, as authorized by the voted of the directors named in that complaint, was something different than what it purported to be or that its benefits were not timely delivered.

Finally, the proposed amended complaint cites to two documents in the Public Inspection File of the Ohio Attorney General's Office (which can be viewed online by using the search engine found at http://www.opif.ag.state.oh.us/secured/ SearchResults.aspx).  Neither of them deal with the type of service offered here (one deals with home improvements and the other with music lessons), and neither appears to add much to the preceding discussion of whether the directors who voted to offer the 2009 membership year early and to curtail the prior year engaged in any type of deceptive practice by doing so.

Two things should be stressed about the Court's analysis of this issue in the context of this ruling.  First, the Court has confined its inquiry to the alleged actions of the directors in connection with the offer of the 2009 membership.  USA Hockey itself is alleged to engaged in additional acts and practices in connection with the offer of the 2008 membership, and those actions, which the proposed complaint does not attribute to the directors named in that complaint, are therefore not addressed here.  Second, the Court is not making a definitive ruling that the proposed amended complaint does not state a viable claim against the directors (or USA Hockey) under the OCSPA even as it relates to the 2009 membership offer.  Such a ruling would more properly be made in the context of a Rule 12(b)(6) motion to dismiss for failure to state a claim.  Rather, the Court is simply assessing the likelihood that the proposed amended complaint would, as it relates to the claims against the directors, survive such a motion.  The Court thinks it unlikely, and therefore concludes that this factor weighs strongly against

-11-

allowing the amendment.

V.

The other factors which the Court is also required to evaluate are either neutral or favor denying the motion. Certainly, plaintiff could have made some effort either to identify the directors of USA Hockey prior to filing the complaint, or named them in a representative capacity, rather than waiting almost a year - and after substantial proceedings have occurred in the case - to try to join them.  The Court does not know if they would all retain separate counsel from USA Hockey, but there is some possibility that their interests might diverge from the organization's interests and that such retention would be necessary.  Folding their counsel's schedule into the current case schedule might prove difficult.

Further, the factual scenario pleaded in the proposed amended complaint does raise substantial issues about personal jurisdiction.  Only one of the sixty-seven directors appears to have an Ohio mailing address, so it is likely that only one is an Ohio resident.  Many are from neighboring states, but some are from thousands of miles away.  The vote taken concerning the 2009 membership year did not occur in Ohio.  While these factors may not be dispositive as to whether the Court could properly exercise personal jurisdiction over the other sixty-six directors, each of them would be entitled to argue that, pursuant to decisions such as Weller v. Cromwell Oil Co., 504 F.2d 927 (6th Cir. 1974), the fact that none of them committed any act while physically in Ohio, and that each acted only in the capacity of a corporate director, would prevent the Court from exercising such jurisdiction.  At the very least, a difficult question would arise as to how the traditional test for personal jurisdiction set forth in decisions like Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985) and International Shoe Co. v. Washington, 326

U.S. 310 (1945) would be applied here, and whether, even if any individual director's act of voting on the 2009 membership year proposal could form the basis for individual liability, that act can qualify as the "purposeful availment" of the privilege of acting in Ohio, and whether other factors, such as interstate comity and how foreseeable it was that these directors could be sued in Ohio for their actions, would render the exercise of personal jurisdiction unreasonable even if minimum contacts had been established.  See Burger King, 471 U.S. at 476-77; see also Balance Dynamics Corp. v. Schmitt Industries, Inc., 204 F.3d 683, 698-99 (6th Cir. 2000).  Thus, at the very least, the addition of these parties would add a new level of complexity to the case, and it would very likely result in delay which would prejudice all parties' ability, and the Court's ability, to resolve this case as promptly and efficiently as possible.

Finally, although this may not be a factor deserving of significant weight, the Court does not believe that the plaintiff will be prejudiced by disallowing the amendment.  The relief sought from the individual directors is identical to the relief sought from USA Hockey, and there is no suggestion on this record that USA Hockey would be unwilling or unable to provide such relief should the Court order it to do so.  Consequently, the Court's conclusion is that it is a better exercise of discretion, notwithstanding the liberal view of amendments to pleadings expressed in Rule 15(a), to deny this particular motion.

VI.

For the foregoing reasons, the Court denies both the motion to strike (included in Doc. #50) and the motion for leave to amend (#44) as it relates to the addition of new defendants.  The motion is granted, however, as it relates to the addition of Nicholas Bush as a new named plaintiff.  An amended complaint which complies with this order shall be filed within fourteen

-13-

days.

VII.

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.4.


                              /s/ Terence P. Kemp
                              United States Magistrate Judge

-14-